Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000908
15-DEC-2016
01:56 PM

NO. CAAP-14-0000908

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ERNESTO VERDUGO, JR., Plaintiff-Appellee,
v.
BUBBA GUMP SHRIMP CO. RESTAURANTS, INC.
Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 06-1-1747-10)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Fujise and Ginoza, JJ.)

Plaintiff-Appellee Ernesto Verdugo, Jr. (**Verdugo**) brought this action against Defendant-Appellant Bubba Gump Shrimp Co. Restaurants, Inc. (**Bubba Gump**) claiming that he sustained serious injuries from a slip and fall at the Mai Tai Bar (**Mai Tai**), which is owned by Bubba Gump and located in the Ala Moana Shopping Center. Bubba Gump appeals from a Judgment filed on June 17, 2014, in the Circuit Court of the First Circuit (**circuit court**).

In this case, a jury trial was held which resulted in a verdict awarding over $2 million to Verdugo. The trial judge granted Bubba Gump's request for a new trial. Subsequently, however, after the case had been re-assigned to another judge, the circuit court filed an "Order Granting Plaintiff's Motion to

Reinstate Judgment Filed February 4, 2013", which in turn lead to the Judgment entered on June 17, 2014.[1]

Bubba Gump contends that the circuit court erred: (1) by "instructing the jury on premises liability absent evidence that defendant had actual or constructive notice of the transitory, unsafe condition of the premises"; (2) by "instructing the jury on general negligence in a condition-of-premises case"; (3) by "instructing the jury on mode-of-operation premises liability in a case in which the defendant is not a big-box store or self-service establishment, and where reasonable precautions were taken to protect against the risk created by the mode of operation"; (4) because "Judge Castagnetti abused her discretion by overruling Judge Border's order granting a new trial on the ground of attorney misconduct"; and (5) because, prior to reinstating the original judgment, Judge Castagnetti precluded further discovery and new experts for the anticipated new trial absent a motion and court order.

For the reasons set forth below, we affirm the Judgment entered on June 17, 2014.

## I.    Background

On March 1, 2005, Verdugo attended a birthday party at Mai Tai.  As Verdugo was exiting Mai Tai, he slipped and fell due to liquid on the floor, which was believed to be beer because a puddle was later found and cleaned by the manager.  Several people assisted Verdugo out of the bar because he was unable to walk on his left foot.

On October 10, 2006, Verdugo filed a Complaint against Bubba Gump alleging that due to his fall at Mai Tai, he sustained serious injuries including, *inter alia*, a blood clot in his leg and chronic swelling and pain.  After extensive pretrial

---

[1] The Honorable Patrick W. Border presided over the jury trial and certain proceedings following trial, including the granting of a new trial and an order denying a motion for reconsideration as to the grant of a new trial. The case was then reassigned to the Honorable Jeannette H. Castagnetti. Ultimately, Judge Castagnetti reinstated the jury verdict and entered the Judgment filed on June 17, 2014.

2

proceedings, a jury trial commenced on August 20, 2012. Judge Border presided over the trial.

On September 6, 2012, the jury returned a verdict for Verdugo. In the Verdict Form, the jury found that Bubba Gump was negligent and that Bubba Gump's negligence was a legal cause of injuries to Verdugo. The jury awarded Verdugo $144,000 in special damages and $2,000,000 in general damages. On January 18, 2013, Judge Border issued an order that awarded Verdugo $8,326.45 in costs. On February 4, 2013, Judge Border entered a Judgment pursuant to the verdict and cost award, thereby awarding Verdugo a total of $2,152,326.45.

On February 22, 2013, Bubba Gump filed "Defendant Bubba Gump Shrimp Co. Restaurants, Inc.'s Motion for a New Trial or Remittitur" (**Motion for a New Trial**).[2] Bubba Gump argued for a new trial due to, *inter alia*, conflicting jury instructions and attorney misconduct.

On May 10, 2013, Judge Border filed a "Memorandum Opinion and Order Regarding Defendant's Motion For a New Trial or Remittitur" (**Order Granting a New Trial**). Judge Border granted a new trial because, *inter alia*, (1) the jury instructions on general premises liability and mode of operation were conflicting; (2) the mode of operation instruction was incomplete; and (3) Verdugo's attorney made inappropriate comments during closing argument.

On March 28, 2014, after several motions and orders were filed concerning the new trial, Verdugo filed a "Motion to Reinstate Judgment Filed February 4, 2013" (**Motion to Reinstate Judgment**).

---

[2] Hawai'i Rules of Civil Procedure (**HRCP**) Rule 59(b) provides: "A motion for a new trial shall be filed no later than 10 days after entry of the judgment." Bubba Gump's Motion for a New Trial falls within the ten-day requirement in HRCP Rule 59(b) because it was stamped as received within ten days, even though it was not filed until later. See Yuen v. Bd. of Appeals, No. 29192, 2012 WL 902231, at *4 (Haw. App. Mar. 19, 2012) ("The Hawai'i Supreme Court has held that submission of a document to a circuit court clerk and the clerk's acceptance and date stamping of it as 'received' constitutes a filing sufficient to satisfy jurisdictional requirements.")

On May 27, 2014, Judge Castagnetti filed an "Order Granting Plaintiff's Motion to Reinstate Judgment Filed February 4, 2013" (**Order to Reinstate Judgment**). Judge Castagnetti found that cogent reasons existed to reinstate the judgment because, *inter alia*: (1) the jury instruction regarding the mode of operation rule was not an erroneous statement or incomplete; (2) the premises liability instruction and the mode of operation instruction were not conflicting, and any mistake in giving both instructions was not prejudicial; and (3) Bubba Gump never objected to the misconduct of Verdugo's attorney during closing arguments and did not ask for a curative instruction, thus waiving this argument as grounds for a new trial.

On June 17, 2014, Judge Castagnetti entered another Judgment in favor of Verdugo, in the total amount of $2,152,326.45 plus interest. On June 26, 2014, Bubba Gump timely appealed.

## II. Standards of Review

### A. Jury Instructions

> When jury instructions, or the omission thereof, are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

Nelson v. Univ. of Haw., 97 Hawai'i 376, 386, 38 P.3d 95, 105 (2001) (internal citations and quotation marks omitted).

### B. Plain Error

> In civil cases, the plain error rule is only invoked when "justice so requires." We have taken three factors into account in deciding whether our discretionary power to notice plain error ought to be exercised in civil cases: (1) whether consideration of the issue not raised at trial requires additional facts; (2) whether its resolution will affect the integrity of the trial court's findings of fact; and (3) whether the issue is of great public import.

Montalvo v. Lapez, 77 Hawai'i 282, 290, 884 P.2d 345, 353 (1994) (citation omitted).

4

C.    **Modification of a Prior Ruling of Another Court of Equal and Concurrent Jurisdiction**

"Unless cogent reasons support the second court's action, any modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion." Wong v. City & Cty. of Honolulu, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983) (emphasis omitted).

D.    **Trial Misconduct**

> Generally, an improper appeal by an opposing party to the prejudices and sympathies of the jury is a ground for granting a motion for a new trial where 1) the moving party has been injured by the improper appeal; 2) the moving party took proper steps to preserve his or her right to relief; 3) the moving party sought to have the harmful effect of the improper appeal remedied by an appropriate jury instruction; and 4) the effect of the improper appeal was not adequately dissipated by the steps taken; or 5) the error was so fundamental that gross injustice would result if a new trial is not granted.

State by Bronster v. U.S. Steel Corp., 82 Hawaiʻi 32, 55-56, 919 P.2d 294, 317-18 (1996) (internal citations and emphasis omitted).

**III. Discussion**

A.    **Jury Instruction on Premises Liability**

Bubba Gump contends that there was no evidence that any Mai Tai staff member was actually aware of the spilled liquid where Verdugo slipped and there was no evidence how long the liquid was on the floor before Verdugo slipped and fell.  Bubba Gump thus argues "[t]here is a complete failure of proof of actual or constructive notice[,]" and hence asserts it was error to give the premises liability instruction to the jury.

The premises liability instruction was given by agreement of the parties.  Thus, we review Bubba Gump's contention for plain error.  See Montalvo, 77 Hawaiʻi at 288, 884 P.2d at 351 ("[E]ven the complete failure to object to a jury instruction does not prevent an appellate court from taking cognizance of the trial court's error if the error is plain and may result in a miscarriage of justice." (citation and internal quotation marks omitted)).

5

Bubba Gump relies on <u>Gelber v. Sheraton-Hawaii Corp.</u>, 49 Haw. 327, 417 P.2d 638 (1966), for the proposition that it was prejudicial error to instruct the jury on an issue or state of facts not supported by the evidence, even if the instruction was a correct statement of the law. <u>Id.</u> at 329-30, 417 P.2d at 640. In short, Bubba Gump appears to contend that without evidence that Mai Tai staff members were aware of the spill prior to Verdugo's slip and fall, or without evidence of how long the spill existed before Verdugo slipped, no premises liability instruction should have been given. We conclude it was not plain error to give the premises liability instruction.

Bubba Gump does not contest that the premises liability instruction was a correct statement of the prevailing law. The instruction as given states:

> A tenant of commercial property has a duty to exercise reasonable care to maintain the property in a safe condition or to give adequate warning to persons reasonably anticipated to be on the property.
>
> To prevail on his claim, plaintiff must prove all of the following elements:
>
> 1. People like plaintiff were reasonably anticipated to be on the property; and
> 2. A condition on the property posed an unreasonable risk of harm; and
> 3. Defendant <u>knew or should have known of the unreasonable risk of harm</u>; and
> 4. Defendant had sufficient control over the property to take reasonable steps to remove the unreasonable risk of harm or to give adequate warning of that risk; and
> 5. Defendant failed to take reasonable steps to remove the unreasonable risk of harm or to give adequate warning of that risk; and
> 6. Defendant's failure was a legal cause of injury to plaintiff.
>
> Defendant need not have exclusive control to have sufficient control over the property. Several persons or entities may each have sufficient control as lessees or tenants, even though their control is only partial or joint.

(Emphasis added.)

As noted in the instruction, the relevant issue is whether Mai Tai staff "knew or should have known" about the spilled liquid on the floor which led to Verdugo's slip and fall. Even without actual knowledge of the spill prior to Verdugo's

fall, it was not error to give the above instruction because -- contrary to Bubba Gump's argument -- constructive notice did not require evidence as to how long the spill was on the floor before Verdugo slipped. Rather, in this case there is a different type of evidence in the record that Mai Tai staff "should have known" of the unreasonable risk of harm. As discussed *infra*, we believe the mode of operation rule applies given the specific circumstances in this case, and thus, the Mai Tai staff had constructive notice that spilled liquid could create a potential safety hazard and lead to the type of slip and fall experienced by Verdugo. See Gump v. Walmart Stores, Inc. (**Gump I**), 93 Hawai'i 428, 5 P.3d 418 (App. 1999), aff'd in part and rev'd in part on other grounds Gump v. Wal-Mart Stores, Inc. (**Gump II**) 93 Hawai'i 417, 5 P.3d 407 (2000).

Thus, it was not plain error to give the premises liability instruction to the jury.

## B. Jury Instructions on Negligence

Bubba Gump next contends that the circuit court erred by instructing the jury on general negligence, because the general negligence instructions obviated the need for Verdugo to prove actual or constructive notice of the unsafe condition. Again, Bubba Gump's contention is without merit because under the mode of operation rule, the manner in which Mai Tai conducted its operation provided constructive notice of the potential hazard.

Additionally, even assuming it was error to give the general negligence instructions, it was invited error. Bubba Gump proposed two instructions regarding negligence, burden of proof regarding negligence[3] and negligence defined,[4] and both

---

[3] Bubba Gump's proposed instruction regarding the burden of proof for negligence was agreed to as modified:

Burden of Proof-Re Negligence
Plaintiff~~(s)~~ must prove by a preponderance of the evidence that defendant~~(s)~~ was/~~were~~ negligent and that such negligence was a legal cause of plaintiff's~~(s')~~ injuries and/or damages. Plaintiff~~(s)~~ must also prove the nature and extent of his/~~her/their~~ injuries and/or damages.

(continued...)

instructions were given by agreement. An appellant who invites an error by requesting that the trial court give particular jury instructions, "should not be permitted to avail herself of the error." Struzik v. City & Cty. of Honolulu, 50 Haw. 241, 245, 437 P.2d 880, 883 (1968) (citation omitted); see also Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 505, 880 P.2d 169, 180 (1994) ("Having accepted the instruction, as modified, the [plaintiffs] waived any objection to it.").

We thus disagree with Bubba Gump's contention that the general negligence instruction was in error, and in any event, it was invited error because Bubba Gump proposed and agreed to the instructions.

C.    **Jury Instruction on Mode of Operation**

Bubba Gump contends that the circuit court erred when it instructed the jury, over Bubba Gump's objection, regarding the mode of operation rule. Bubba Gump contends that the mode of operation rule does not apply to Bubba Gump because Mai Tai is not a big box store or self-service establishment and even if the mode of operation rule applied, Bubba Gump took reasonable steps to protect against the risk created by its mode of operation.

---

[3](...continued)
~~Defendant(s) must prove by a preponderance of the evidence that plaintiff(s) was/were negligent and that such negligence was a legal cause of plaintiff's(s') injuries and/or damages.~~

[4] Bubba Gump's proposed instruction for negligence defined was agreed to as follows:

Negligence Defined
Negligence is doing something which a reasonable person would not do or failing to do something which a reasonable person would do. It is the failure to use that care which a reasonable person would use to avoid injury to himself, herself, or other people or damage to property.
In deciding whether a person was negligent, you must consider what was done or not done under the circumstances as shown by the evidence in this case.

### 1. The mode of operation rule generally

The mode of operation rule was adopted by this court in Gump I and the Hawai'i Supreme Court affirmed adoption of the rule in Gump II. The plaintiff in that case was injured after she slipped on a french fry and fell in a Wal-Mart store, near to where a McDonald's restaurant operated within the Wal-Mart store. Gump I, 93 Hawai'i at 433, 5 P.3d at 423. This court began the analysis regarding Wal-Mart's potential liability with the traditional rule of premises liability, which provides:

> if a condition exists upon the land which poses an unreasonable risk of harm to persons using the land, then the possessor of the land, if the possessor knows, or should have known of the unreasonable risk, owes a duty to the persons using the land to take reasonable steps to eliminate the unreasonable risk, or adequately to warn the users against it.

Id. at 436, 5 P.3d at 426 (quoting Corbett v. Ass'n of Apartment Owners of Wailua Bayview Apartments, 70 Haw. 415, 417, 772 P.2d 693, 695 (1989)). Under the traditional rule of premises liability, "a defendant cannot be held responsible for its acts or omissions without notice or knowledge, or without reasonably being chargeable with knowledge." Id. This court recognized, however, that the required notice for liability "may stem, not from the specific instrumentality of the accident . . . but from the general mode of operation of a business, if the specific hazardous instrumentality is a reasonably foreseeable consequence of that mode of operation." Id. at 441, 5 P.3d at 431. Thus, this court adopted, and the Hawai'i Supreme Court affirmed, the mode of operation rule which provides:

> where a plaintiff is able to demonstrate that the business proprietor adopted a marketing method or mode of operation in which a dangerous condition is reasonably foreseeable and the proprietor fails to take reasonable action to discover and remove the dangerous condition, the injured party may recover without showing actual notice or constructive knowledge of the specific instrumentality of the accident.

Id. at 441-42, 5 P.3d at 431-32 (citation omitted). As the supreme court noted in Gump II, "[b]ecause the commercial establishment should be aware of the potentially hazardous conditions that arise from its mode of operation, an injured

plaintiff need not prove that the defendant had actual notice of the specific instrumentality causing his or her injury. Notice is imputed from the establishment's mode of operation." Gump II, 93 Hawai'i at 420-21, 5 P.3d at 411-12.

In Gump II, the supreme court also clarified this court's opinion

> by holding that the application of the rule is limited to circumstances such as those of this case. Wal-Mart chooses, as a marketing strategy, to lease store space to McDonald's in order to attract more customers and encourage them to remain in the store longer. Wal-Mart also chooses, for the most part, not to prevent patrons from carrying their McDonald's food into the Wal-Mart shopping area. This mode of operation gave rise to the hazard that caused Gump's injury. Under the mode of operation rule, Gump was not required to prove that Wal-Mart had actual notice of the specific instrumentality that caused her injury.

Id. at 421, 5 P.3d at 411. Thus, the supreme court limited the mode of operation rule to circumstances such as those in Gump, but did not limit the rule's application to only big box stores or self-service establishments.

The Hawai'i Supreme Court also considered whether the mode of operation rule applied in Moyle v. Y & Y Hyup Shin, Corp., 118 Hawai'i 385, 191 P.3d 1062 (2008), decided eight years after Gump II. There, in the early morning hours after having beers at a club, the plaintiff was assaulted and robbed by another club patron on the sidewalk outside the club. Id. at 388, 191 P.3d at 1065. The plaintiff argued on appeal that the trial court should have given the jury a mode of operation instruction because the owners of the club testified they were aware of the need for security but continued to operate without security as part of their mode of operation. Id. at 396, 191 P.3d at 1073. The supreme court disagreed, explaining:

> Gump II focused on Wal-Mart's "marketing strategy," which inherently led to a foreseeable risk of danger. In line with this reasoning, the "mode of operation" doctrine has been limited almost entirely to "self-service" and "big box" store slip and fall cases, as the convenience offered to customers through their ability to serve themselves, a marketing strategy, is also fraught with the danger of spills causing hazardous floor conditions. See Gump v. Wal-Mart Stores, Inc., 93 Hawai'i 428, 442-43, 5 P.3d 418, 432-33 (App.1999) ("Gump I ") (" 'While the self-service

10

> marketing method has economic advantages for the store owner or business proprietor and permits consumers the freedom to browse, examine, and select merchandise that they desire, certain problems are inherent in the method which are infrequently encountered under traditional merchandising methods that involve individual customer assistance.' " (quoting Donald M. Zupanec, Annotation, *Store or Business Premises Slip-and-Fall: Modern Status of Rules Requiring Showing of Notice of Proprietor of Transitory Condition Allegedly Causing Plaintiff's Fall*, 85 A.L.R.3d 1000, 1004-05 n. 14 (1978))); *id.* at 444, 5 P.3d at 434 (explaining that the mode of operations rule applies " 'when the operating methods of a proprietor are such that dangerous conditions are continuous' " (quoting *Pimentel v. Roundup Co.*, 100 Wash.2d 39, 666 P.2d 888, 892 (1983))).

> By contrast, in the present matter, the [Defendants] had not chosen, as a marketing strategy or a mode of operation, to invite individuals with criminal tendencies onto their premises in order to generate business. In other words, they did not hold out their lack of security as an enticement to potential patrons. Any ostensibly dangerous condition, particularly the possibility of violent individuals attacking patrons outside the club, was simply not traceable to the defendants. *See Gump II*, 93 Hawai'i at 421, 5 P.3d at 411 (observing that the mode of operation rule is "consistent with the exception to the notice requirement where the dangerous condition is traceable to the defendant or its agents").

Id. at 396-97, 191 P.3d at 1073-74 (footnote and some citations omitted)(emphasis added). The supreme court in Moyle thus held that the circuit court had not erred in refusing to give the mode of operation instruction to the jury "because the rule did not apply to the facts of this case." Id. at 397, 191 P.3d at 1074.

In another case from Hawai'i, Munguia v. Grelyn of Maui, LLC, Civ. No. 09-00058 HG-BMK, 2011 WL 1364026 (D. Haw. Apr. 8, 2011), aff'd 473 Fed. App'x. 643 (9th Cir. 2012), the United States District Court, District of Hawai'i, analyzed the application of the mode of operation rule in light of a jury verdict for a slip and fall incident that occurred at a McDonald's restaurant on Maui. In addressing a motion for judgment as a matter of law and the sufficiency of the evidence for liability under the mode of operation rule, the District Court stated:

> Defendant knowingly allows customers to serve themselves and dispose of their food products, creating a risk of falling food in the dining area of its restaurant. This is precisely the same risk that the *Gump* court identified. The risk of falling food inherent in Wal-Mart's mode of operation

11

> (maintaining a McDonald's restaurant within the store) is even greater in the McDonald's restaurant itself, where the food is produced and "self-served."

Id. at *8. The District Court ruled that McDonald's "utilized a mode of operation involving the 'self-service' of greasy food products, and that this mode of operation created a reasonably foreseeable and regularly occurring slip and fall danger." Id. Ultimately, the District Court concluded:

> There was sufficient evidence at trial to support each of the necessary elements of a finding of liability for negligence under the mode of operation rule. There was sufficient evidence that: (1) Defendant utilized a mode of operation with a reasonably foreseeable dangerous condition; (2) Defendant's mode of operation resulted in a dangerous condition (a slippery floor) that caused Mrs. Munguia to be injured; and (3) Defendant failed to take reasonable action to discover and remove the dangerous condition.

Id. at 25.

Moreover, in Sarkisian v. Concept Restaurants, Inc., 32 N.E.3d 854 (Mass. 2015), the Supreme Judicial Court of Massachusetts applied the mode of operation rule to a nightclub.[5] The court determined that the mode of operation rule applied to the nightclub even though the nightclub fell outside of the context of a self-serve establishment. Id. at 859.

In Sarkisian, the plaintiff slipped and fell on a wet surface and suffered two fractures in her leg. Id. at 856. Patrons of the bar could purchase beverages served in plastic cups and were permitted to consume the beverages on the dance floor while dancing. Id. The nightclub's staff of security guards, barbacks, and a manager were all collectively responsible for cleaning up spills. Id. In addition, the nightclub's manager testified that "spills on the dance floor are part of the business." Id. at 861.

---

[5] We note that in its briefs on appeal, Bubba Gump cited to the lower court rulings in Sarkisian, which had refused to extend the mode of operation rule to the circumstances of that case. See Sarkisian v. Concept Rest., Inc., No. 11-ADMS-70010, 2012 WL 5337230 (Mass. App. Div. October 19, 2012); Sarkisian v. Concept Rest., Inc., No. 13-P-154, 2014 WL 5285600 (Mass. App. Ct. October 17, 2014). The Supreme Judicial Court of Massachusetts subsequently reversed the lower court rulings. Sarkisian, 32 N.E.3d at 856, 861.

The court noted with regard to the facts of the case:

> The nightclub's mode of operation included the sale of beverages in plastic cups from bars located on a dance floor. The patrons were then permitted to dance while holding their beverages. It was reasonably foreseeable that such a mode of operation would result in a recurring theme of cups being jostled and liquid being jettisoned by patrons onto the dance floor. Where that liquid is spilled on a floor, crowded with dancers, in a dimly lit setting with flashing strobe lights, and the only route of travel to and from the lounge area is across that dance floor, common sense tells us that the spill creates an unsafe condition that a patron such as the plaintiff is ill-suited to discern, except, perhaps, by the happenstance of a slip and fall.

Id. at 860. The court also recognized that "in cases such as this, the owner has scarce incentive to act reasonably, because the injured patron will seldom be able to discern the origin of the unsafe condition and, thus, satisfy the notice requirement under the traditional approach to premises liability." Id. Therefore, the court concluded "that summary judgment was improperly granted and that the defendant had notice of the inherent risks associated with its chosen mode of operating its dance floor." Id. at 861.

> 2.     **The mode of operation rule applies in this case**

In this case, the jury instruction regarding the mode of operation rule read as follows:[6]

---

[6] The jury instruction on mode of operation read to the jury in this case was based on Hawai'i Civil Jury Instructions, Instruction 17.4. This jury instruction arguably omits a material element of the mode of operation rule because it does not require the jury to determine whether the business proprietor, Bubba Gump, adopted a marketing method in which a dangerous condition was reasonably foreseeable. See Gump II, 93 Hawai'i at 420, 5 P.3d at 410 (stating "where a plaintiff is able to demonstrate that the business proprietor adopted a marketing method or mode of operation in which a dangerous condition is reasonably foreseeable and the proprietor fails to take reasonable action to discover and remove the dangerous condition, the injured party may recover without showing actual notice or constructive knowledge of the specific instrumentality of the accident" (Emphasis added.)); see also Fisher v. Big Y Foods, Inc., 3 A.3d 919, 924 n.13 (Conn. 2010) (stating in the jury instruction "[u]ltimately the burden is upon the plaintiff to prove that the defendant's mode of operation created a foreseeable risk of injury"); Chiara v. Fry's Food Stores of Arizona, Inc., 733 P.2d 283, 286 (Ariz. 1987) ("We think, therefore, that a jury should determine if Fry's reasonably could have anticipated that sealed bottles regularly were opened and spilled. Of course, that conclusion alone would not support a finding of liability. If Fry's exercised reasonable care under the circumstances, it will prevail at trial."). However, Bubba Gump did not raise this issue on appeal and it is

(continued...)

> A business has a duty to exercise reasonable care to maintain its premises in a safe condition and remove unreasonable risks of harm that arise from the way in which a business is conducted or operated.
>
> To prevail on his claim, plaintiff must prove all of the following elements:
> 1. A condition on the property posed an unreasonable risk of harm; and
> 2. Defendant failed to take reasonable steps to remove the unreasonable risk of harm or to give adequate warning of that risk; and
> 3. Defendant's failure was a legal cause of injury to plaintiff.

The mode of operation rule applies to Bubba Gump in this case because the undisputed evidence regarding the manner in which Mai Tai was operated established that patrons were knowingly allowed to carry pitchers of drinks throughout the premises, even though it was known that liquids will foreseeably be dropped onto the floor. See Gump II, 93 Hawai'i at 421, 5 P.3d at 411. For example, Francine Cekada (**Cekada**), the General Manager for Mai Tai, testified that customers walk up to the bar and order pitchers of beer and carry the pitchers back to their tables, including the standing table where Verdugo slipped and fell. Cekada also testified that drinks are carried throughout the bar. In addition, Cekada testified that no one person is responsible for cleaning up the spills at Mai Tai and instead all

---

[6](...continued)
therefore waived.

In addition to the issue being waived, the undisputed evidence in this case establishes that Bubba Gump adopted a marketing method in which a dangerous condition was reasonably foreseeable (that is, by allowing customers to order pitchers at the bar and proceed to walk around the premises with full pitchers knowing that spills are an ongoing occurrence). Thus, any error in not presenting this question to the jury was harmless. See State v. Aplaca, 96 Hawai'i 17, 26, 25 P.3d 792, 801 (2001)(holding that the failure to submit an essential sentencing factor to the jury was subject to harmless error analysis) (citing Neder v. United States, 527 U.S. 1 (1999)).

We make one further observation about the instruction in this case. In granting a new trial, Judge Border noted that the mode of operation instruction given to the jury included "an alternate requirement to 'give adequate warning of the risk' - a requirement which admittedly is not included in either Gump appellate decision." Judge Border was correct that giving adequate warning is not part of the mode of operation rule as adopted in Gump. As set forth in Gump I and Gump II, the mode of operation rule requires that the proprietor "take reasonable action to discover and remove the dangerous condition." Gump I, 93 Hawai'i at 442, 5 P.3d at 432 (emphasis added); Gump II, 93 Hawai'i at 420-21, 5 P.3d at 410-11 (emphasis added). We do not address this issue because Bubba Gump did not raise it on appeal.

staff must take care of them when they are found.

Paul David Braden (**Braden**), the manager on duty on the night of the incident, also testified that customers can walk up to the bar and walk away with a pitcher of beer and many people walk around the bar with the pitcher. In a deposition that was read to the jury, Braden stated that no one specifically saw the beer get spilled on the floor, however, based on his opinion "people are playing around or they're moving around in general. The pitchers are full, they slosh their beer. It's an ongoing thing, all night long, drying the floors and keeping people from making puddles." After Verdugo slipped and fell, Braden and another waitress cleaned up a puddle of beer that measured approximately two feet by two feet in the area where Verdugo's accident occurred.

Given the facts of this case, Bubba Gump, through its mode of operation of knowingly allowing patrons to order their beer at the counter and then move around the premises with full pitchers, while knowing that spills are an "ongoing thing," created a foreseeable risk that liquid would be spilled on the floor causing dangerous conditions to exist. Given the specific and undisputed evidence in this case, application of the mode of operation rule is appropriate.

### 3. Substantial evidence was presented that Bubba Gump failed to take reasonable steps to prevent injury

Bubba Gump also contends that even if the mode of operation rule applies in this case, Verdugo did not prove that Bubba Gump failed to take reasonable care to prevent the injury.

In Gump I, this court noted that under the mode of operation rule, if the plaintiff meets its burden to link "the specific instrumentality of the accident to the proprietor's mode of operation" and proves "that the proprietor's mode of operation was such that it was reasonably foreseeable that the dangerous instrumentality would occur," the "plaintiff must still prove that the defendant failed to take reasonable care to prevent injury." Gump I, 93 Hawaiʻi at 445, 5 P.3d at 435 (emphasis

15

added).

Whether Bubba Gump failed to take reasonable care to prevent injury to Verdugo is a question of fact for the jury to decide. See Sheehan v. Roche Bros. Supermarkets, Inc., 863 N.E.2d 1276, 1286 (Mass. 2007) ("Thus, because the determination of reasonableness is a question of fact, the trier of fact must determine whether the owner could reasonably foresee or anticipate that a foreseeable risk stemming from the owner's mode of operation could occur and whether the owner exercised reasonable care in maintaining the premise in a safe condition commensurate with these foreseeable risks."); Kelly v. Stop & Shop, Inc., 918 A.2d 249, 263-64 (Conn. 2007) ("The defendant may rebut the plaintiff's evidence by producing evidence that it exercised reasonable care under the circumstances. Of course, the finder of fact bears the ultimate responsibility of determining whether the defendant exercised such care.").

A jury verdict "will not be set aside where there is substantial evidence to support the jury's findings." Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 296, 141 P.3d 459, 469 (2006). Substantial evidence means "credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." Id. (brackets in original).

In this case, there was substantial evidence to support a jury finding that Bubba Gump failed to take reasonable care to prevent the injury. The patrons at Mai Tai were allowed to order beer and walk around the bar with the beer in their hand. As stated above, Braden testified that people at Mai Tai "are playing around or they're moving around in general." When asked: "You're saying that it's a frequent occurrence that there would be puddles or liquid on the floor?" Braden responded: "Frequent occurrences like people slosh their drinks around, yes. They're having fun. They are relaxed." Although spills are inevitable, on the night of the injury, there was no one assigned specifically to cleaning up spills on the floor. In addition,

16

the path to the exit of the bar may not have been clear and unobstructed on the night that Verdugo fell because the bar was crowded with patrons. Finally, Verdugo testified that on the night of the accident the security guards did not have flashlights to clear the way to the exit. Thus, there was credible evidence for a reasonable person to conclude that Bubba Gump did not take reasonable precautions to prevent the injury to Verdugo.

### D.    Attorney Misconduct

Bubba Gump contends that Judge Castagnetti applied an erroneous legal standard when she overruled the Order Granting a New Trial based on Verdugo's attorney's improper statements during closing arguments. Bubba Gump did not object to the comments during closing argument and thus brought the issue before the circuit court for the first time when it filed its Motion for a New Trial.

In general, "the trial court has inherent power to reconsider interlocutory orders." Cho v. State, 115 Hawai'i 373, 383, 168 P.3d 17, 27 (2007). The Supreme Court of Hawai'i, in Wong articulated the standard regarding the modification of a prior ruling of another judge of equal jurisdiction. The supreme court stated that:

> A judge should generally be hesitant to modify, vacate or overrule a prior interlocutory order of another judge who sits in the same court. Judicial restraint in this situation stems from considerations of courtesy and comity in a court with multiple judges, where each judge has equal and concurrent jurisdiction.
>
> The normal hesitancy that a court would have in modifying its own prior rulings is even greater when a judge is asked to vacate the order of a brother or sister judge. The general rule which requires adherence to a prior interlocutory order of another judge of the same court thus commands even greater respect than the doctrine of 'law of the case' which refers to the usual practice of courts to refuse to disturb all prior rulings in a particular case, including rulings made by the judge himself.

Wong, 66 Haw. at 395-96, 665 P.2d at 162 (internal citations omitted). Thus, a court must have "cogent reasons" to support "any modification of a prior ruling of another court of equal and

concurrent jurisdiction." Id. at 396, 665 P.2d at 162. As an example, exceptional circumstances may warrant a modification of a prior order of a fellow judge to correct any patent errors. Tradewinds Hotel, Inc. v. Cochran, 8 Haw. App. 256, 264-65, 799 P.2d 60, 66 (1990).

Bubba Gump contends that Verdugo's attorney, during closing and rebuttal argument, made inappropriate comments regarding: (1) the testimony of Bubba Gump's medical expert witness because Verdugo's attorney repeatedly stated that the doctor was a liar; and (2) Verdugo's attorney improperly made comments regarding the fact that it is possible to die from a slip and fall injury.

First, at various points in closing argument and rebuttal argument, Verdugo's attorney made the following comments regarding Dr. Schneider, Bubba Gump's witness:

> [Opposing counsel is] going to try to tell you that all the accident caused was a sprained ankle, and his reliance is 100 percent on Dr. Schneider, who is one of the biggest liars you've ever seen because he's one of the biggest liars I've ever seen and I've been doing this for 32 years.
>
> . . . .
> There isn't a single witness who testified on the other side who told you nothing but the truth. And there's one of them that's the biggest --Dr. Schneider is as big a liar as I've ever seen anywhere. Doctor, no doctor, witness, no witness. It doesn't matter. He's the biggest -- he's as big of a liar as I've ever seen.
>
> . . . .
> Dr. Schneider is a liar. What possible motivation Mr. Estes says could he have to lie. You know, that's a really good question. I got two. One is money, okay, charging $600 an hour for his deposition, okay, not answering the questions just like he didn't hear. Right? But that's not a sufficient explanation because why would someone -- why would a surgeon like that with -- why would he display such a complete lack of human empathy and to come into a courtroom and talk stink about someone that he's never met and say that it couldn't possibly have come from that? Why would a person do that? The reason a person would do that is they're a bad -- that's a bad person. That's a bad person who would do that.
>
> . . . .
> And if you buy Dr. Schneider, I'm in the wrong line of work. I mean, I'm in the wrong line of work.
> You know, I used to think that I'd be able to spot liars. I'm not as good at spotting liars as I thought I was, but I can spot that one. You don't have to be Clarence Darrow to know that guy was lying.

In the Order Granting a New Trial, Judge Border stated that "[a]lthough Plaintiff's counsel's closing statements regarding Dr. Schneider crossed the line from 'hard' to 'foul,' they are not enough, standing alone, to overturn the results of an eight day jury trial." (Footnote omitted.)

Judge Border instead based his granting of a new trial on comments made by Verdugo's attorney at the end of the rebuttal argument:

> You're here to decide this case, and in deciding this case, you are going to determine what the rest of Ernie Verdugo's life looks like one way or the other. One function of a verdict in a case like this is to change behavior. It's obvious that these people are not going to otherwise. You would not be surprised if you read in the paper tomorrow morning that somebody slipped and fell and died at the Mai Tai Bar. It won't be Ernie Verdugo this time. Maybe it's going to be a 22-year-old UH medical student who admires Dr. Masuda and wants to be a doctor. Maybe she's going to drop dead. Okay.
> You have a great obligation. You have a great responsibility, and that great responsibility is also a great opportunity. And the responsibility and the opportunity have the same name, and that name is justice. You're here to do justice. You have a rare opportunity in this lifetime to do justice, so do justice. Go and do justice.

Based on the above statements, Judge Border found that the "clear intent of the remarks was to arouse the most maudlin of emotional sentiments."  In addition, Judge Border stated "[n]ot only does the argument have the effect of inflaming juror emotions, but it misstates the role of causation and foreseeability in the law of negligence."

In the Order to Reinstate Judgment, Judge Castagnetti concluded:

> By failing to object during closing argument, by failing to request a curative instruction and/or by failing to move for a mistrial, Defendant did not properly preserve its objections to counsel's remarks as a basis for a new trial. Defendant's objections to counsel's remarks were clearly waived. As such, the court's decision to grant a new ...trial based on conduct and arguments that were not properly preserved and were waived is not sufficient legal cause to grant a new trial.

Thus, Judge Castagnetti found it was patent error to grant a new trial.

The Supreme Court of Hawai'i articulated the standard for statements made by an opposing counsel meant to appeal to the prejudices and sympathies of the jury:

> Generally, an improper appeal by an opposing party to the prejudices and sympathies of the jury is a ground for granting a motion for a new trial where 1) the moving party has been injured by the improper appeal; 2) the moving party took proper steps to preserve his or her right to relief; 3) the moving party sought to have the harmful effect of the improper appeal remedied by an appropriate jury instruction; and 4) the effect of the improper appeal was not adequately dissipated by the steps taken; or 5) the error was so fundamental that gross injustice would result if a new trial is not granted.

State by Bronster, 82 Hawai'i at 55-56, 919 P.2d at 317-18 (citations and emphasis omitted); see also Young v. Price, 48 Haw. 22, 29, 395 P.2d 365, 370 (1964) ("The failure to make objections to the argument of plaintiff's counsel precludes our consideration of the contended errors in accordance with the fundamental rule that misconduct occurring upon a trial must be brought to the attention of the court when it occurs or is discovered, and unless objected to cannot be relied upon as error upon a motion for new trial or upon appeal."); Stewart v. Brennan, 7 Haw. App. 136, 148, 748 P.2d 816, 824 (1988) ("A party may not rely on alleged trial misconduct as a ground for new trial unless the party had objected to that conduct and brought it to the attention of the court.").

In this case, Bubba Gump did not object during trial and thus failed to preserve its right to relief. Bubba Gump also did not request a curative jury instruction to remedy any harmful effects of the comments.

Furthermore, a gross injustice would not occur if a new trial was not granted. First, Judge Border determined that the comments regarding Dr. Schneider's credibility were not prejudicial enough to grant a new trial. Second, the statements alluding to the fact that a person could die due to a slip and fall at Mai Tai were stated after an eight day trial and at the very end of Verdugo's rebuttal argument, a small fraction of the hour and a half allotted to each party for closing argument.

20

Therefore, Judge Castagnetti did not abuse her discretion when she reinstated the original judgment.

### E. Limitation on Discovery

Bubba Gump contends that Judge Castagnetti erred when she filed an "Order Granting Plaintiff's Motion for Protective Order, Precluding All Discovery, New Experts and Depositions Absent a Court Order, and Taking Under Advisement All Other Relief Requested." Because the order addresses discovery for a new trial, and we conclude it was not error to reinstate the original judgment, we do not reach this point of error.

## IV. Conclusion

Based on the foregoing, we affirm the Judgment filed on June 17, 2014.

DATED: Honolulu, Hawaiʻi, December 15, 2016.

On the briefs:

Wayne M. Sakai,
Michiro Iwanaga,
Richard C. Sutton, Jr.,
Max J. Kimura,
(Sakai Iwanaga Sutton Law Group)
        and
Andrea M. Gauthier,
S. Thomas Todd,
(Horvitz & Levy, LLP),
for Defendant-Appellant.

Howard Glickstein,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

21